UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

ANTHONY THOMAS WILLS,

        Plaintiff,                      Case No. 1:12-cv-434

v.                                            Honorable Paul L. Maloney

MELISSA BARBER et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

        Also before the Court are several motions filed by Plaintiff, including a motion for extension of time to pay the initial partial filing fee (docket #7), a motion to amend the complaint (docket #8), and a motion for a physical examination (docket #10). Plaintiff's motion for an

extension of time will be denied as moot, Plaintiff's motion to amend the complaint will be granted, and Plaintiff's motion for a physical examination will be denied.

Based on Plaintiff's amendments to his complaint, Defendant Czop will be added as a party, and Defendants Sigler, Norwood, Martin, LeBarre, and Jane Doe will be dismissed without prejudice. Moreover, after review of Plaintiff's amended complaint, the Court will dismiss the complaint, in part, for failure to state a claim against Defendants Barber, Breedlove, Huss, and Heyns. The Court will also dismiss Plaintiff's retaliation claim against Defendants Fair and John Doe. The Court will, however, allow Plaintiff's Eighth Amendment claims against Defendants Czop, Kennerly, Fair and John Doe to proceed; thus, the Court will order service of the amended complaint on Defendants Czop, Kennerly, and Fair.[1]

## Discussion

I. Motions

Plaintiff Anthony Thomas Wills is a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF), where the events giving rise to the complaint occurred. Defendants are employees of the MDOC and/or ICF.

Plaintiff filed his complaint on May 2, 2012. On May 15, 2012, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis*, and required him to pay an initial partial filing fee of $6.17 within 28 days. On May 30, 2012, Plaintiff requested an extension of time to pay the filing fee (docket #7). Less than a week later, however, the Court received the initial partial filing fee. Consequently, Plaintiff's motion for an extension of time will be denied as moot.

---

[1]The Court lacks sufficient information to order service on John Doe at this time.

On May 31, 2012, Plaintiff filed a motion to amend the complaint together with a proposed amended complaint. (*See* Mot. to Am. Compl., docket #8; Am. Compl., docket #8-1.) Plaintiff asks the Court to accept his amended complaint so that he can remove certain Defendants, add a Defendant, and add or change the facts in his original complaint.

Plaintiff may amend his complaint once as a matter of course before it has been served. *See* Fed. R. Civ. P. 15(a)(1). Accordingly, Plaintiff's motion will be granted and Plaintiff's amended complaint (docket #8-1) will replace the original. Moreover, Dr. Richard Czop will be added as a Defendant, and the following Defendants will be dismissed without prejudice because they are not named in the amended complaint: Nurse Kathy Sigler, Assistant Deputy Warden (ADW) Narnette Norwood, Officer (unknown) Martin, Nurse Jody LeBarre, and an unknown nurse identified as "RN Jane Doe." (*See* Compl., docket #1, Page ID#1.)

Finally, Plaintiff asks the Court to order Defendants to provide him with a complete physical and mental examination (docket #10). He claims that he suffers from various health problems, but Defendants refuse to provide adequate testing to diagnose his condition; instead, they falsely attribute his symptoms to a mental illness. The Court construes Plaintiff's request as a motion for preliminary injunctive relief, which the Court will address in Section IV, *infra*.

  II.  Factual allegations

In his amended complaint, Plaintiff sues MDOC Director Daniel Heyns, as well as the following employees of ICF: Assistant Resident Unit Supervisor (ARUS) Melissa Barber, Dr. Richard Czop, Physician's Assistant (PA) Michael Kennerly, Grievance Coordinator M. Breedlove, Officer (unknown) Fair, Assistant Deputy Warden (ADW) Erica Huss, and an unknown corrections officer identified as "c/o John Doe." (*See* Am. Compl., docket #8-1, Page ID#40.)

Plaintiff alleges that on February 13, 2012, Defendant Barber told other prison officials that Plaintiff was being held at ICF because he had assaulted a staff member at another facility.  The next day, Officer Fair served Plaintiff a food tray consisting of food loaf with a hole in it, and the hole was filled with toilet-bowl cleaner.  Officer John Doe delivered a similar food tray on the following day.  On February 16, Officer Fair delivered a food tray with food loaf that "looked okay," but when Plaintiff bit into the loaf, he realized that it had toilet-bowl cleaner on the bottom of it.  (Am. Compl., Page ID#42.)  After Plaintiff swallowed a piece of the loaf, he became "violently sick."  (*Id.*)

The amended complaint provides no details regarding Plaintiff's physical symptoms, but his original complaint and its attachments provide additional information.  In a grievance filed by Plaintiff on March 27, 2012, Plaintiff complained that he had been sick "from something" since February 16, 2012, and was not able to eat anything until March 12.  (Grievance No. ICF-1203-0533-128E, docket #1-1, Page ID#12.)  He complained that he was experiencing dizziness, difficulty breathing, stomach problems, and numbness in his head.  (*Id.*)  Plaintiff filed a similar grievance on April 12, 2012, complaining that he was experiencing episodes of dizziness, blacking out, rising body heat, and numbness and tingling in his head.  (Grievance No. ICF-1204-0653-12D1, docket #1-1, Page ID#9.)

Plaintiff provides additional details in his motion for a physical examination; he asserts that as soon as he ate some of the contaminated food loaf, he felt a burning sensation in his mouth, throat, and stomach.  (Mot., docket #10, Page ID#46.)  Plaintiff also asserts:

> Ever since the digestion of the toilet bowl cleaner on February 16th 2012 I have had serious head problems such as my entire right part of my head has severe pains, my entire head heats up really bad, I'm constantly dizzy, my eyes are constantly blurry, I feel like I want to pass out all the time, when it

> starts up really bad my entire face goes numb and tingley, I have fatigue and really bad shortness of breath, my stomach burns and heats up really bad, and my neck swells up making it very hard to breath. Every couple of days I'll have spells where I will vomit all day and some time lasts for a couple of days. I've also spit up blood on 3 occassions. I get very dilusional and lose focus really fast. And very disoriented.

(*Id.* at Page ID##47-48 (errors in original).)

Plaintiff claims that Defendants have not provided adequate testing and treatment for his illness. Plaintiff initially saw a nurse on February 18, 2012. (Compl., docket #1, Page ID#5.) Two days later, a doctor sent Plaintiff to a hospital because he suspected that Plaintiff might have a problem with his appendix. (*Id.*)

PA Kennerly saw Plaintiff on April 18, 2012. (*Id.* at Page ID#7.) When Plaintiff "tried to address [his] head issue" with Kennerly, he told Plaintiff "'we're not here for that . . . I just want to check your weight.'" (*Id.*) When Dr. Czop saw Plaintiff, he checked Plaintiff's eyes, ears, temperature, and breathing, and told Plaintiff that nothing was wrong. (Mot., docket #10, Page ID#47.) He also indicated that budget cuts precluded further diagnostic testing. (Am. Compl., docket #8-1, Page ID#42.) Czop and Kennerly told Plaintiff that if his condition worsened, they might examine him again. (*Id.*) They refused to order an MRI for Plaintiff or refer him to another doctor. Plaintiff allegedly informed Czop and Kennerly "many times" that his illness was not getting better. (*Id.*)

Plaintiff also contends that Defendant Barber interfered with his outgoing mail. Barber allegedly received several of Plaintiff's personal and legal letters for mailing on various dates, but she discarded some without mailing them, and in some cases she "switched the contents in the envelope[s]" before sending them in the mail. (*Id.* at Page ID#41.) Plaintiff filed grievances against Barber and complained to her supervisor about her conduct. Barber then fabricated a

misconduct charge against Plaintiff because he "exercis[ed] [his] right to file complaints." (*Id.*) Grievance Coordinator Breedlove received Plaintiff's grievances against Barber, but Breedlove lost many of them before they could be reviewed.

Plaintiff told ADW Huss about Barber's conduct, about the incidents involving the toilet-bowl cleaner, and about the inadequate treatment of his "head issue," but she told him that her staff "does not do that, they are professionals," and she took no further action. (*Id.*) In addition, Plaintiff's family contacted Director Heyns on several occasions, but he did not respond. Eventually, Plaintiff was moved to a housing unit where Barber is not the supervisor, but Plaintiff still is not receiving "proper treatment" for his "serious health (head issue) problem." (*Id.*)

Based on the foregoing, Plaintiff claims that Defendants have violated his constitutional rights. As relief, Plaintiff seeks damages to pay for future medical care, punitive damages from each Defendant, transfer to another prison facility, and/or any other appropriate relief.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Retaliation

Plaintiff asserts that various Defendants retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the

protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that Officers Fair and John Doe served him contaminated food in retaliation for Plaintiff's assault against an officer at another facility. An assault on an MDOC official is not conduct protected by the First Amendment. *Cf. Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (conduct violating a prison regulation is not protected conduct). Thus, Plaintiff does not state a retaliation claim against Defendants Fair and Doe.

Plaintiff also contends that Barber fabricated a misconduct charge against Plaintiff because he complained about her in prison grievances and in complaints to her supervisor. *See Campbell*, 250 F.3d at 1037 (noting that the filing of a prison grievance is protected conduct). Plaintiff's allegations against Barber do not support a plausible claim, however, because they are wholly conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). But, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts [are] not . . . sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Plaintiff merely alleges the ultimate fact of

retaliation by Barber; he has not presented any facts to support his conclusion that her adverse action was motivated by Plaintiff's protected conduct. Indeed, the allegations fail to suggest even a temporal connection between the adverse action and the protected conduct, as Plaintiff does not indicate when he complained about Barber's conduct, or when Barber charged him with misconduct. Thus, Plaintiff fails to state a plausible retaliation claim against Barber.

### B.     Prisoner grievances

Plaintiff asserts that Grievance Coordinator Breedlove lost some of Plaintiff's grievances, which has prevented Plaintiff from exhausting claims that he intends to pursue in court. It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See  Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Even if Breedlove prevented Plaintiff from exhausting prison grievances, however, that conduct cannot compromise Plaintiff's right of access to the courts. While a prisoner must exhaust administrative remedies before pursuing a civil-rights action, that requirement only applies to "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). If Breedlove's actions prevented Plaintiff from using the grievance process, then that process was not available to Plaintiff, and exhaustion would not be a prerequisite for initiation of a civil rights action. Consequently, Plaintiff cannot state an access-to-the-courts claim against Breedlove.

The Court cannot discern any other possible § 1983 claim stemming from Breedlove's conduct. The Sixth Circuit has held that there is no due-process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002). Moreover, an alleged failure to comply

with an administrative rule or policy does not necessarily result in a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. For the foregoing reasons, therefore, Plaintiff does not state a claim against Defendant Breedlove.

### C. Contaminated food

Plaintiff asserts that Officers Fair and Doe served Plaintiff food contaminated with toilet-bowl cleaner. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). At this time, the Court concludes that Plaintiff's allegations against Defendants Fair and John Doe are sufficient to state an Eighth Amendment claim; thus, the Court will allow that claim to proceed.

### D. Medical treatment

Plaintiff also contends that Defendants Czop and Kennerly have refused to provide adequate testing and treatment for his illness. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th

Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Construing Plaintiff's *pro se* pleadings generously, as it must, the Court concludes that Plaintiff arguably states an Eighth Amendment claim against Defendants Czop and Kennerly.[2] Accordingly, the Court will allow that claim to proceed.

### E. Prisoner Mail

Plaintiff also contends that Defendant Barber interfered with or threw away some of his outgoing personal and legal mail. Interference with, or destruction of, a prisoner's outgoing mail could violate the prisoner's First Amendment right of access to the courts, Sixth Amendment right to counsel, or Fourteenth Amendment right to due process. *See Stanley v. Vining*, 602 F.3d 767, 769-71 (6th Cir. 2010). Plaintiff's allegations are too vague to demonstrate a violation of any of the foregoing rights, however. Plaintiff does not identify any particular instance in which Barber

---

[2]To the extent Plaintiff asserts that other Defendants, such as ADW Huss and Director Heyns, violated Plaintiff's Eighth Amendment rights by failing to ensure that he receive proper medical care, he does not state a claim against them. None of the facts alleged indicate that they were aware of the details of Plaintiff's condition, much less that they were deliberately indifferent to a risk of serious harm.

interfered with or destroyed his mail, he does not describe any particular item of mail affected by Barber's actions, and it is not clear whether Plaintiff suffered any meaningful injury. While a prisoner possesses certain rights in connection with his outgoing mail, not every instance of interference with, or destruction of, outgoing mail gives rise to a constitutional claim. Thus, Plaintiff's vague allegations fail to state a plausible claim because they do not permit the Court to infer more than the mere "possibility" of a constitutional violation. *See Iqbal*, 556 U.S. at 679.

### F.     Supervisor Liability

To the extent Plaintiff asserts claims against Defendants Heyns and Huss, or any of the other Defendants, merely because of their supervisory capacity over other officials or because they failed to correct the conduct of others, he does not state a viable claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 566 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 566 U.S. at 676. Plaintiff has failed to allege that Heyns or Huss engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

    IV.  <u>Preliminary injunctive relief</u>

    Plaintiff asks the Court to order a full mental and health examination in order to facilitate treatment of his illness. The Court construes this request as a motion for preliminary injunctive relief. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Where a prison inmate seeks an order enjoining state prison officials, the Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Plaintiff's request for a medical examination is premised on his Eighth Amendment claim with respect to Defendants' alleged refusal to provide adequate medical testing and treatment. It is not at all clear from Plaintiff's *pro se* complaint and subsequent filings that he has a substantial likelihood of success on that claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of deliberate indifference to a serious medical need. It is not at all clear that Defendants were aware of a serious need when they allegedly refused to provide further treatment. Moreover, it is not at all clear that Defendants were deliberately indifferent, as Defendants provided some medical attention for his illness. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Accordingly, the first factor weighs against granting the relief requested by Plaintiff.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of preliminary relief is irreparable only if it is not fully compensable by monetary damages.

*See Overstreet*, 305 F.3d at 578. In Plaintiff's case, there is no evidence that his health is deteriorating or that Defendants continue to deny him care for specific, serious concerns. In short, Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning the administration of prisons are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in that activity is necessarily disruptive. The public welfare therefore militates against the issuance of preliminary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87.

In sum, the foregoing factors do not favor the relief that Plaintiff requests. Accordingly, his motion for a medical examination will be denied.

## Conclusion

As indicated, Plaintiff's motion for an extension of time to pay the partial filing fee will be denied as moot, his motion to amend the complaint will be granted, and his motion for a medical examination will be denied. Based on the amendments to the complaint, Defendant Czop will be added as a party, and Defendants Sigler, Norwood, Martin, LeBarre, and Jane Doe will be dismissed without prejudice. Moreover, after reviewing the amended complaint as required by the Prison Litigation Reform Act, the Court determines that Defendants Barber, Breedlove, Huss, and Heyns will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's retaliation claim against Defendants Fair and John Doe will also be dismissed with prejudice for failure to state a

claim. The Court will allow Plaintiff's Eighth Amendment claims against Defendants Czop, Kennerly, Fair, and John Doe to proceed, but the Court will only order service of the complaint on Defendants Czop, Kennerly, and Fair at this time, as the Court lacks sufficient information to order service on Defendant John Doe.

   An Order consistent with this Opinion will be entered.


Dated:   August 16, 2012      /s/ Paul L. Maloney
              Paul L. Maloney
              Chief United States District Judge