UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANTHONY THOMAS WILLS,

        Plaintiff,                        Case No. 1:12-cv-434

v.                                           Honorable Paul L. Maloney

MELISSA BARBER et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action under 42 U.S.C. § 1983 brought by a state prisoner proceeding *in forma pauperis*. Plaintiff Anthony Thomas Wills is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF). He initially filed this action on or around May 2, 2012, naming as defendants MDOC Director Daniel Heyns and the following employees of ICF: Assistant Resident Unit Supervisor (ARUS) Melissa Barber, Deputy Wardens Erica Huss and Narnette Norwood, Health Unit Manager (HUM) Jody LeBarre, Grievance Coordinator M. Breedlove, Nurse Kathy Sigler, Physician's Assistant (PA) Michael Kennerly, Officer (unknown) Martin, Officer (unknown) Fair, an officer identified as "John Doe," and a nurse identified as "Jane Doe." (Compl., docket #1, Page ID##2-4.)

To summarize Plaintiff's action, he asserts that he has been mistreated by officials at ICF because they discovered that he had attacked a prison official at another facility. In January 2012, ARUS Barber allegedly threw away one of his grievances and then accused Plaintiff of a misconduct after he filed a complaint about her.

Between February 14 and 16, 2012, Officers Fair and John Doe allegedly put toilet-bowl cleaner in Plaintiff's food on several occasions. On February 16, Plaintiff ate the food given to him by Officer Fair and unwittingly ingested some of the toilet-bowl cleaner. Plaintiff then became ill, experiencing frequent vomiting, dizziness, and nausea, as well as severe pain, numbness, and tingling in his head. For several weeks, Plaintiff was unable to eat. Plaintiff was sent to the hospital on February 20 for an MRI of his appendix and a blood test, but various prison officials, including Dr. Richard Czop and PA Kennerly, have ignored or refused to provide him with adequate testing or medical care for his symptoms, particularly those related to his head.

Plaintiff further alleges that Grievance Coordinator Breedlove allegedly interfered with Plaintiff's grievances and/or refused to process them, and several prison officers, including Officer Martin, harassed Plaintiff or threatened to harm him if he asked for help. Plaintiff allegedly complained about some of the foregoing conduct to MDOC Director Heyns and to Deputy Wardens Huss and Norwood, but they took no action.

On May 31, 2012, Plaintiff filed a motion to amend his complaint, together with a proposed amended complaint. On August 16, 2012, the Court entered an opinion and order granting Plaintiff's motion to amend the complaint, thereby adding Defendant Czop to the action. The Court then dismissed Defendants LeBarre, Martin, Norwood, Sigler, and the party identified as "Jane Doe" without prejudice, because they were not named in the amended complaint.

After reviewing the amended complaint as required by the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court: dismissed Defendants Barber, Breedlove, Heyns, and Huss with prejudice for failure to state a claim; dismissed Plaintiff's retaliation claim against Defendants Fair and "John Doe" for failure to state a claim; allowed an

Eighth Amendment claim to proceed against Defendants Czop, Fair, Kennerly, and "John Doe"; and ordered service of the amended complaint on Defendants Czop, Fair, and Kennerly. (*See* docket ##15, 16.)

The matter presently is before the Court Plaintiff's second motion to amend the complaint (docket #41), and motion for reconsideration of the aforementioned opinion and order (docket #42).

## Second Motion to Amend the Complaint

In Plaintiff's proposed second amended complaint (docket #41-1), he asserts new and more detailed allegations against: defendants who are currently parties in the case (Czop, Doe, Fair, Kennerly); defendants who were dismissed with prejudice for failure to state a claim (Barber, Breedlove); defendants who were dismissed without prejudice because they were not named in the first amended complaint (Martin, Norwood); and a new party not previously named as a defendant, Officer (unknown) Dreybeck.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading "once" as a matter of course within 21 days of serving it. Fed. R. Civ. P. 15(a)(1)(A). Plaintiff has already amended his pleading once and it has been served. In "all other cases," Rule 15 states, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Applying these standards, the Court will grant Plaintiff's second motion to amend the complaint in part, and deny it in part.

First, the Court will allow Plaintiff to amend the complaint to the extent that it asserts claims against parties who have already been served in this action, *i.e.*, Defendants Czop, Fair, and Kennerly. The Court notes that they have not filed objections to Plaintiff's motion.

Second, the Court will allow Plaintiff to amend his complaint to the extent that it asserts claims against other defendants who were named in one of his earlier versions of the complaint, *i.e.*, Defendants Barber, Breedlove, Martin, and Norwood. In so doing, the Court recognizes that *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The general contours of Plaintiff's claims against the foregoing Defendants were present in his original and/or first amended complaint, though the proposed second amended complaint is much more detailed, and potentially cures some defects in his allegations.

In contrast, Plaintiff never named Dreybeck as a defendant in his earlier pleadings. Indeed, the only mention of Dreybeck in those pleadings is in his original complaint, where he asserts that "[e]verything started on February 13th 2012 when ARUS Barber informed C/O Dreybeck that I was at [ICF] for (assault on staff 2 years ago)." (Compl., docket #1, Page ID#5.) Now, in his third version of the complaint, Plaintiff alleges that Dreybeck harassed him on February 13, 2012, by shaking down his cell, throwing his legal papers around the room and in the toilet, ripping up his family photos, issuing him a misconduct ticket, and placing him on food loaf. (2d Am. Compl., docket #41-1, Page ID##129-30.) In addition, when Plaintiff tried to get the attention of a nurse on February 16, 2012, the day that he ingested the toilet bowl cleaner, Dreybeck "hurried" the nurse by Plaintiff's cell, telling him, "She isn't going to help you, quit asking." (*Id.* at Page ID#132.)

- 4 -

Plaintiff's allegations against Dreybeck are not tied to his claims against the other defendants. The Court need not permit Plaintiff to continue amending his complaint and expand his action to add new claims against new parties, when those claims clearly could have been raised earlier in these proceedings. Plaintiff is free to pursue any claims against Dreybeck in a separate action. Therefore, the Court will allow the proposed second amended complaint, except to the extent that Plaintiff seeks to add Officer Dreybeck as a defendant.

**Second Amended Complaint**

The PLRA provides that a court "shall dismiss [a] case at any time" if it finds that it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2); *see also* 42 U.S.C. § 1997e(c) (providing that the court may dismiss the action "on its own motion or on the motion of a party"). Thus, having allowed Plaintiff to amend his complaint as set forth herein, the Court will review the second amended complaint in accordance with the PLRA to determine if any newly-added Defendants should be dismissed. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying the foregoing standards, the Court will dismiss Defendants Breedlove and Norwood for failure to state a claim, but will order service of the second amended complaint on Defendants Barber and Martin.

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases under 28 U.S.C. § 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Barber

In its August 16, 2012 opinion and order, the Court dismissed Barber because Plaintiff's allegations were too vague and/or conclusory to state a claim. Plaintiff's second amended complaint expands on those allegations and asserts additional conduct by Barber.

On January 11, 2012, Plaintiff allegedly filed a grievance against Barber because she refused to file a different grievance. A few days later, Plaintiff complained to Resident Unit Manager (RUM) Payne about Barber's actions. On January 23, Barber walked by Plaintiff's cell and told him, "[Y]ou should not have been such a baby and wrote a grievance on me[.]" (2d Am. Compl., docket #41-1, Page ID#128.) On January 24, Plaintiff learned that Barber had issued a sexual misconduct ticket on him. On January 29, Barber told other officers to have Plaintiff pack up his belongings and move him to another cell because of the sexual misconduct ticket. While Plaintiff was being escorted to the new cell, Barber told Plaintiff, "[Y]ou see what happens when you write grievances[.]" (*Id.*)

On February 21, 2012, Plaintiff asked Barber to move him to different cell because the heat was too high and he could not breathe. She refused, telling Plaintiff that he needed to stop crying. Later that day, the heat in his cell was turned up higher.

On February 22, Plaintiff tried to send mail to his family through his attorney. Barber allegedly read Plaintiff's mail and told him that she had given it to the "garbageman." (*Id.* at Page ID#135.) The next day, Barber told Plaintiff that his aunt had called the prison to ask about him, but Barber told her that nothing was wrong. Plaintiff then gave Barber some legal mail, and she took it without giving Plaintiff a receipt. Apparently, the mail was never sent.

Upon review, the Court concludes that Plaintiff's amended allegations against Barber suffice to state a claim against her. The Court will allow Plaintiff's action against her to proceed, as set forth in the second amended complaint. To the extent that this Court determined in its August 16, 2012 opinion that Plaintiff failed to state a claim against Barber, this Opinion supercedes and replaces that determination.

### C. Defendant Breedlove

Plaintiff claims that Grievance Coordinator Breedlove has prevented him from filing grievances or has tried to stop him from appealing them. When Plaintiff sent her a grievance regarding Defendant Barber's interference with his mail, Breedlove processed it at step I but then lost the response to his grievance and the step II appeal form. When Plaintiff requested a step II form, she refused to provide one, forcing Plaintiff to appeal the grievance by using a different form and sending it to directly step III. On March 12, 2012, Plaintiff allegedly filed six grievances concerning conduct by Defendants Doe, Czop, Fair, and Kennerly, but Breedlove never processed them. Plaintiff asserts that Breedlove has done this every time that he writes a grievance against another staff member, which violates his "right to the grievance process." (*Id.* at Page ID#142.)

The Court previously dismissed similar allegations against Breedlove for failure to state a claim. (*See* 08/16/2012 Op. at 9-10, docket #15.) As the Court indicated in its August 16, 2012 opinion, the Sixth Circuit has held that there is no constitutional right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99–3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty

- 8 -

interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93–2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, an alleged failure to comply with prison policy does not, in itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Furthermore, to the extent Plaintiff claims that Breedlove's actions interfered with his right to access the courts, *see Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), he has not stated a viable claim. While a prisoner must exhaust "available" prison grievance remedies before pursuing a civil-rights action, s*ee* 42 U.S.C. § 1997e(a), if Breedlove prevented Plaintiff from using the grievance process, then that process was not available to Plaintiff, and exhaustion would not be a prerequisite for initiation of a civil rights action. Consequently, Breedlove will be dismissed for failure to state a claim.

### D. Defendant Martin

Plaintiff contends that he encountered Officer Martin in a "dayroom" on February 18, 2012, where Plaintiff had been taken to be seen by a nurse. (2d Am. Compl. ¶ 10, docket #41-1, Page ID#132.) Martin and several other officers were present in the room, circled around Plaintiff. When Plaintiff looked at the nurse, Martin grabbed him by the neck and forced his head toward the floor, telling him to look down. Another officer, Defendant Fair, then slapped Plaintiff in the face, telling Plaintiff not to look at him. Martin told Plaintiff, "'If you ask for help again we'll bounce

your head off the floor.'" (*Id.* at Page ID#133.) Plaintiff's allegations are sufficient to state a claim against Martin. Consequently, the Court will allow Plaintiff's action against him to proceed.

### E. Defendant Norwood

Plaintiff alleges that he spoke with Deputy Warden Norwood on March 16, 2012. He told her about the conduct of the other Defendants from February. She indicated that she had received a letter and phone calls from Plaintiff's family asking about his condition. She asked Plaintiff if he wanted to tell his family anything; Plaintiff told her to tell them that he was "okay for now." (*Id.* at Page ID#138.) On March 19, 2012, Plaintiff received a letter from his sister indicating that Norwood told her that Plaintiff had been diagnosed by the prison psychiatrist as being schizophrenic, and that Plaintiff was being "paranoid" about people trying to poison him. (*Id.* at Page ID#139.) Plaintiff asserts that he has been diagnosed as having "antisocial disorder" and "personality disorder[ . . . not] otherwise specified," but he has never been diagnosed as being schizophrenic. (*Id.*) Plaintiff contends that he did not give Norwood or any other prison staff permission to disclose his medical or mental health information to others.

To the extent that Plaintiff sues Norwood because she had supervisory authority over other Defendants, or because she failed to take action after he informed her what had happened to him, he does not state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not

enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor, like Norwood, failed to act based upon information learned from a prisoner through a complaint or grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, Norwood's supervisory authority over other prison officials, and her failure to act on Plaintiff's complaints regarding past behavior by other prison officials, do not suffice to state a claim.

Likewise, Plaintiff's contention that Norwood told Plaintiff's sister that he is schizophrenic, even though he has not been diagnosed as such, does not state a claim. Plaintiff does not have a constitutionally-protected interest in ensuring that prison officials make accurate representations about him to members of his family.

In addition, to the extent Plaintiff contends that his right to privacy was violated because his medical information was disclosed to or by Norwood without his consent, he does not state a viable § 1983 claim. There is a constitutional right to informational privacy under the Fourteenth Amendment, but the Sixth Circuit has limited that right "'only to interests that implicate a fundamental liberty interest.'" *Wurzelbacker v. Jones-Kelley*, 675 F.3d 580, 586 (6th Cir. 2012) (quoting *Lambert v. Hartman,* 517 F.3d 433, 440 (6th Cir. 2008) (internal quotation marks and citation omitted)). A plaintiff alleging a violation of his informational privacy rights must demonstrate that "'the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (quoting *Bloch v. Ribar*, 156 F.3d

673, 684 (6th Cir. 1998) (internal quotation marks and citation omitted)); *see also Lee v. City of Columbus*, 636 F.3d 245, 260 (6th Cir. 2011); *J.P. v. DeSanti*, 653 F.2d 1080, 1087–91 (6th Cir. 1981).

Applying the foregoing standard, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to non-disclosure of personal information. *See, e.g., Lee*, 636 F.3d at 261 (city's requirement that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk pursuant to an open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers to prisoners did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the court "has recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters 'of a sexual, personal, and humiliating nature.'" *Wurzelbacher*, 675 F.3d at 586 (quoting *Lambert*, 517 F.3d at 440).

Plaintiff does not allege that the disclosure of his medical information to or by Norwood put him at risk of bodily harm, or involved information of a sexual, personal, and humiliating nature. Moreover, none of Plaintiff's allegations meaningfully distinguish his case from *Lee*, *Summe*, *Coleman*, or *Jarvis*, in which the Sixth Circuit held that the disclosure of medical information did not violate the plaintiff's constitutional right to privacy. *See Lee*, 636 F.3d at 261 ("[W]e have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."). Thus, Plaintiff does not state an informational privacy claim against Defendant Norwood. As a result, she will be dismissed with prejudice.

## Motion for Reconsideration

Plaintiff's motion for reconsideration is arguably moot because it challenges the Court's evaluation of his first amended complaint, but that complaint is now amended. Nevertheless, the Court will address the motion because Plaintiff's objections potentially apply to the Court's evaluation of the second amended complaint.

First, Plaintiff notes that the Court dismissed a retaliation claim against Officers Doe and Fair, who allegedly retaliated against Plaintiff by putting toilet-bowl cleaner in his food because he attacked an officer at another facility. The Court concluded that Plaintiff does not state a retaliation claim because attacking a prison officer is not protected conduct. (*See* 08/16/2012 Op. at 7-8, docket #15.) For the same reason, Plaintiff has not stated a retaliation claim against Doe and Fair in the second amended complaint.

Plaintiff objects that he did not intend to allege retaliation; instead, he intended to allege a claim for "retribution" or punishment in violation of his rights under the Fifth, Eighth,

Ninth, and Fourteenth Amendments. (Mot. for Reconsid., docket #42, Page ID#173.) However, the Court has already allowed an Eighth Amendment claim against Defendants Doe and Fair to proceed; Plaintiff's invocation of the Fifth, Ninth, and Fourteenth Amendments adds nothing to that claim. The Ninth Amendment does not confer any additional substantive rights. *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). With respect to the Fifth and Fourteenth Amendments, Plaintiff presumably claims that Defendants Doe and Fair violated his right to due process. A substantive due process claim arises when a government official engages in conduct "so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)). However, even if Plaintiff states a substantive due process claim, the more "explicit textual source of constitutional protection" for the conduct by Defendants Doe and Fair is in the Eighth Amendment, which prohibits cruel and unusual punishment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Because Plaintiff's claim is properly construed as one under the Eighth Amendment, he cannot also proceed with a claim under the "more generalized notion of substantive due process." *Graham*, 490 U.S. at 395.

Next, Plaintiff asserts that his allegations in the first amended complaint were sufficient to state a claim against Defendant Breedlove. The Court determined that Plaintiff failed to state a claim against Breedlove because he does not have a constitutional right to a prison grievance procedure, and her conduct could not have compromised his access to the courts. (*See*

08/16/2012 Op. at 9-10, docket #15.) For the same reasons, Plaintiff has not stated a claim against Breedlove in the second amended complaint.

In response, Plaintiff argues that his right to access the courts was not at issue. Plaintiff asserts that Breedlove's conduct denied him his right to freedom of speech and his right to petition the government for redress, because prisoners in Michigan cannot "petition their Senators, State Representatives, Corrections Ombudsman, or Civil Service Commission" until they have appealed a grievance to step III of the grievance appeal process. (Mot. for Reconsid., docket #42, Page ID##173-74.)

Plaintiff's allegations are unsupported. Assuming that the ability to "petition" elected representatives, the Corrections Ombudsman, or the Civil Service Commission is a right guaranteed by the Constitution, Plaintiff has not alleged any circumstances in which he was prevented from exercising that right. Moreover, Plaintiff may "petition" elected officials by means of a letter without first exhausting a prison grievance, and while prisoners are "advised" to exhaust available administrative remedies before filing a complaint with the Corrections Ombudsman, they are not *required* to do so. *See* Mich. Compl. Laws § 4.356(1); *see also* MDOC Policy Directive 03.02.135 ¶ C (providing that prisoners "should" exhaust administrative grievance remedies before complaining to the Corrections Ombudsman).

Next, Plaintiff argues that, even if Breedlove did not *actually* impair Plaintiff's right to access the courts, her *attempt* to do so is enough to state a claim. To the contrary, Plaintiff must plead actual injury to pending or contemplated litigation in order to state an access-to-the-courts claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Where, as here, injury has not been alleged, an attempt is not sufficient to state a claim.

Plaintiff further argues that Breedlove's actions prevent the actions of the other Defendants from being "documented/exposed." (Mot. for Reconsid., docket #42, Page ID#174.) Nevertheless, Plaintiff has not sufficiently alleged, in any version of his complaint, that Breedlove impaired any of his constitutional rights by preventing him from filing or appealing prison grievances.

In sum, Plaintiff has not demonstrated any error in the Court's opinion. Consequently, his motion for reconsideration will be denied.

## **Conclusion**

For the foregoing reasons, Plaintiff's second motion to amend the complaint will be granted in part and denied in part. The second amended complaint will replace first amended complaint, except to the extent that Plaintiff seeks to add Officer Dreybeck as a party to this action. Furthermore, after review of the second amended complaint under the PLRA, the Court will dismiss Defendants Breedlove and Norwood for failure to state a claim, but the Court will order service of the second amended complaint on Defendants Barber and Martin. Finally, Plaintiff's motion for reconsideration will be denied.

An order will be entered that is consistent with this Opinion.

Dated:  February 19, 2013  /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge